UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CR-60117-RKA

**UNITED STATES**,

 *Plaintiff*,

v.

**FRANZ P. CANNET,**

 *Defendant*.
_____/

## ORDER

On April 14, 2020, without first exhausting his administrative remedies, Franz Cannet filed an Emergency Motion for Release from Incarceration and Modification of Sentence to Home Confinement Pursuant to 18 U.S.C. § 3582 (the "Motion") [ECF No. 118]. The Government opposes the Motion. *See* Government's Response to Defendant's Emergency Motion for Release from Incarceration and Modification of His Sentence to Home Confinement ("Response") [ECF No. 120]. The Court agrees with the Government that Mr. Cannet is not entitled to the relief he seeks. In addition to failing to exhaust his administrative remedies—a necessary precondition to the Motion—Mr. Cannet does not demonstrate that "extraordinary and compelling" circumstances justify his release. The Motion is therefore **DENIED**.

### THE FACTS

On May 5, 2016, a jury convicted Mr. Cannet of (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See* Motion at 1. For the conspiracy, this Court sentenced him to a mandatory minimum term of ten

years in prison. For the gun count, this Court imposed a consecutive five-year term. *See id.*; *see also* Response at 1.

Mr. Cannet is now incarcerated at the Federal Correctional Institution in Miami, Florida ("FCI Miami"). *See* Motion at 1. As of this writing, he has served about five-and-a-half years of his 15-year prison sentence—though, when he filed the Motion in April of 2020, he had served less than five years. *Id.* at 2. His release date—taking into account federal sentencing reductions for good behavior—is in March of 2028. *Id.*

The catalyst for this Motion—like the many similar motions this Court has handled over the past nine months—is the COVID-19 pandemic. *Id.* at 2. Mr. Cannet argues that, as a 40-year-old inmate with health issues—specifically, high blood pressure and kidney disease—the virus is especially dangerous to him. In his Motion, Mr. Cannet details the conditions of his confinement, notes the spread of the coronavirus in BOP facilities around the country, and contends that the Bail Reform Act supports his request. *Id.* at 3–6. He also asks the Court to balance his imprisonment's "total harm and benefits to prisoner and society" against "the heightened risks posed to him during this rapidly encroaching pandemic." *Id.* at 7. And he urges the Court to consider several alternatives to incarceration—such as home confinement, electronic monitoring, and temporary confinement (colloquially known as furlough). *Id.*

On January 7, 2021, Mr. Cannet filed an Emergency Motion for Medical Attention and Release from Incarceration Pursuant to 18 U.S.C. § 3582 and 18 U.S.C. § 3142(i) ("Emergency Motion") [ECF No. 122]. In that Emergency Motion, Mr. Cannet disclosed that he had contracted COVID-19 and that his kidney condition was worsening. *Id.* at 1–2. As redress, he sought transfer to the nearest hospital for immediate medical attention. *Id.* at 2. At a hearing that same day, *see* Jan. 7, 2021 Hearing ("Hearing") [ECF No. 124], the Court heard from Mr. Cannet's counsel

2

(who waived Mr. Cannet's appearance), the Government, and a representative from BOP. The BOP official explained that, although Mr. Cannet had contracted COVID-19 more than a week earlier, he was entirely *asymptomatic* and had not complained of *any* medical emergencies. *See id.* Because the Court lacked authority to direct the BOP to transfer Mr. Cannet to a hospital—and since Mr. Cannet's illness did not appear to present any medical emergency—the Court denied the Emergency Motion. *See* Order [ECF No. 123]. The BOP subsequently provided the Court with medical records and the results of Mr. Cannet's COVID-19 test, which confirmed that, while Mr. Cannet had contracted the virus, he was asymptomatic. *See* Jan. 7, 2020 Email from Evelyn Blanco Hawran (BOP) to Court ("Jan. 27 Email") [ECF No. 125-1]. The BOP also represented that Mr. Cannet had not complained of any symptoms and that medical staff would continue to monitor and evaluate his health. *Id.*

## THE LAW

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). Federal law permits a district court to modify a prisoner's sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," and sets forth the four steps courts must take in determining whether the petitioner is entitled to a reduction. *See* 18 U.S.C. § 3582.

*First*, the Court must ascertain whether the prisoner "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should

3

"consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also United States v. Stuyvesant*, 2020 WL 1865771, at *2 (S.D. Fla. April 14, 2020).

## ANALYSIS

### I. Exhaustion of Administrative Remedies

As Mr. Cannet concedes, he has not exhausted his administrative remedies. *See* Motion at 2 (asserting that "the urgency of this request does not allow Mr. Cannet to exhaust any administrative remedies that could, under normal circumstances, be pursued"). This Court has no authority to reduce Mr. Cannet's sentence, except by statute, and the applicable statute allowed Mr. Cannet to file the Motion only "*after* [he] ha[d] fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or *after* 30 days have passed "from the receipt of such a request by the warden of [Mr. Cannet's] facility, whichever is earlier." § 3582(c)(1)(A) (emphasis added).[1] On this basis alone, the Court must **DENY** the Motion.

***

Nevertheless, for the following reasons, even if Mr. Cannet had exhausted his administrative remedies, the Court would still deny his Motion on the merits.

---

[1] For the reasons this Court outlined in *United States v. Leija*, 2020 WL 3547029, at *3 (S.D. Fla. June 30, 2020), the Court cannot waive the exhaustion requirement.

4

## II.     18 U.S.C. § 3553(a)

Mr. Cannet does not argue that any of the § 3553(a) factors weigh in favor of a sentence reduction in his case. *See generally* Motion. In any event, the Court considered these factors when it sentenced him, and the Eleventh Circuit affirmed his sentence on appeal. *See United States v. Cannet*, 708 F. App'x 555, 557 (11th Cir. 2017). Thus, "to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(a), the § 3553(a) factors counsel against a reduction here, *see United States v. Post*, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (declining to reconsider the § 3553(a) factors in a motion for a reduced sentence because "much of the information that [the defendant] provide[d] in his [motion] was before the Court at the time of his sentencing").

## III.    18 U.S.C. § 3582

The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)     extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned,

> and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

To begin with, Mr. Cannet does not argue that he's entitled to release under § 3582(c)(1)(A)(ii). *See generally* Motion. Nor can he: he's only 40 years old and has not served 30 years of his sentence. Thus, his Motion turns on whether "extraordinary and compelling reasons" justify a reduction under § 3582(c)(1)(A)(i). On this question, Mr. Cannet says very little—other than to mention that he has high blood pressure and kidney disease and to describe the effects of the COVID-19 pandemic on the BOP. As we describe below, however, these factors do not constitute the kinds of "[e]xtraordinary and compelling reasons" that would justify the relief Mr. Cannet is seeking.

The Sentencing Commission[2] has helpfully defined the contours of the "extraordinary and compelling reasons" test as follows:

> 1. **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

---

[2] Congress has given the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under § 3582]." 28 U.S.C. § 994(t).

>required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>(ii) The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

The reference to "subdivision (2)" requires that Mr. Cannet show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

>**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;

7

>   (3) the history and characteristics of the person, including—
>
>>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Mr. Cannet bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

Mr. Cannet cannot satisfy any of these tests. He cannot (and does not try to) satisfy the "Age of the Defendant" test because he is 40 years old and has not alleged that he suffers from any age-related decline. Nor does he meet the "Medical Condition of the Defendant" test, which contains two elements. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The second requires him to demonstrate that he suffers from conditions "that substantially diminish[ ] [his] ability . . . to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii).

Mr. Cannet does not say that his high blood pressure and kidney disease are terminal illnesses under § 1B1.13 cmt. n.1(1)(A)(i). Nor does he argue that his conditions, on their own, are (1) "serious physical or medical condition[s]," (2) "serious functional or cognitive impairment[s]," or (3) conditions contributing to his "deteriorating physical or mental health," as required by § 1B1.13 cmt. n.1(1)(A)(ii). Indeed, he never even describes the degree or seriousness of his high blood pressure, nor does he claim to be on dialysis for kidney disease. *See generally* Motion. Instead, his claim turns on whether these conditions, combined with the COVID-19 pandemic, seriously threaten his health—and, therefore, whether they constitute extraordinary and compelling circumstances. *See generally id.*

But Mr. Cannet's argument that he's far more likely to suffer serious medical complications from COVID-19 is now moot, because, while he's been infected with COVID-19, he remains entirely asymptomatic. *See* Hearing; *see also* Jan. 27, 2020 Email. The Court, therefore, need not consider whether his high blood pressure and kidney disease put him at a higher risk of serious illness.[3]

---

[3]     The CDC says that people with high blood pressure "*might*" be at risk of severe illness, not that they "*are*" at high risk. *See COVID-19, People at Increased Risk: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (emphases added), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Jan. 25, 2021). High blood pressure, moreover, is common amongst older Americans and is not an "extraordinary condition." *United States v. Wilson*, 2020 WL 4193624, at *2 (M.D. Fla. July 21, 2020) ("[N]either asthma nor high blood pressure is an extraordinary condition. The C.D.C. reports that 108 million adults in the United States (about 45% of the adult population) have high blood pressure or take medication for the condition."). Indeed, as a different Judge on this Court has explained, "virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the

9

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. And it has caused profound suffering. In the United States alone, more than 25,200,000 people have tested positive for the disease, and over 420,200 Americans have died from it. *See CDC COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Jan. 25, 2021). The Court is therefore sympathetic to Mr. Cannet's plea and does not intend—in any way—to minimize the threat COVID-19 poses to inmates who are (necessarily) in close quarters with one another. That said, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Nor should we read former Attorney General William Barr's memo urging the release of particularly vulnerable inmates as a get-out-of-jail-free card for every incarcerated person. *See Ballesteros*, 2020 WL 2733647, at *1; *see also United States v. Burkes*, 2020 WL 2308315, at *2 (S.D. Fla. May 8, 2020)

---

coronavirus, but this does not entitle every inmate over 50 to be released." *United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020).

As for kidney disease, the CDC does list it as a high-risk condition for COVID-19 complications. *See COVID-19, People at Increased Risk: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Jan. 25, 2021). It is not clear whether Mr. Cannet's kidney disease—which does not require dialysis—would put him at such risk. Mr. Cannet, after all, did not provide the Court with medical records. In any event, the issue is moot: the BOP is monitoring Mr. Cannet's condition, and he remains asymptomatic. *See* Hearing; *see also* Jan. 27, 2020 Email.

In addition, as the Government points out, Mr. Cannet suffered from high blood pressure and kidney disease when he committed the crimes for which he is currently incarcerated. *See* Response at 5. Mr. Cannet does not argue otherwise. *See generally* Motion. That Mr. Cannet possessed cocaine with intent to distribute it and carried a firearm in furtherance of that crime while experiencing these same medical conditions undermines any claim that the conditions are *now* extraordinary enough to warrant a sentence reduction.

10

(petitioner's hypertension, coupled with the COVID-19 pandemic, did not constitute "extraordinary and compelling reasons").

Because Mr. Cannet's ailments are neither "compelling" nor "extraordinary," his Motion must be **DENIED**.

### IV.    18 U.S.C. § 3142

Even if Mr. Cannet had shown compelling circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by § 3142.

Mr. Cannet has not attempted to show that he is no longer a danger to any other person or the community. *See generally* Motion. Although he suggests that his proposed conditions of release, such as home confinement, could "Ameliorat[e] Any Danger To the Community," he makes no substantive argument in this regard. *See id.* at 7. Indeed, he says only that home confinement would protect the "*health* of others." *Id.* (emphasis added). While this implies that his release might not exacerbate the spread of the virus, it says nothing about the nature of his crime, his personal history or characteristics, his past conduct, or anything else that might be relevant to the Court's inquiry. Nor does Mr. Cannet respond to the Government's point that he had been deemed a flight risk and a danger to the community after his arrest and prior to his trial. *See* Response at 2; *see generally* Motion. Mr. Cannet, in short, has not carried his burden on this critical question.

### V. Home Confinement and Other Relief

Mr. Cannet specifically requests "home confinement" or temporary furlough. *See* Motion at 2, 7. The Government opposes this request and argues that, because designation decisions are committed solely to BOP's discretion, this Court has no authority to direct BOP to place a defendant in home confinement. *See* Response at 17.

The Government is correct: this Court cannot tell the BOP where to house its inmates. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. But decision-making authority rests with the BOP." (internal citation omitted)); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality op.) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). And home confinement is still a form of "incarceration." *United States v. Springer*, 2020 WL 3989451, at *2 (10th Cir. July 15, 2020) ("[The prisoner] was transferred to home confinement under the recently enacted CARES Act due to the COVID-19 pandemic. [His] transfer to home confinement is not a release from imprisonment, nor does this transfer reduce the length of his custodial sentence."); *United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014) ("Section 3624(c) makes clear that, even though a prisoner is . . . in home confinement, he is still serving a 'term of imprisonment.' When read together, these statutes plainly indicate that a person is in the BOP's 'custody' while serving the remainder of a sentence in home confinement." (internal citations omitted)).

While the Eleventh Circuit has not clarified whether courts may order home confinement under § 3582(c)(1)—the provision at issue here—its analysis of the closely-related § 3582(c)(2) is instructive. That provision allows an inmate to petition for a reduced sentence after the Sentencing Commission has lowered the Guidelines range under which that inmate was sentenced. *See* §

12

3582(c)(2) ("In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."). And, in the context of § 3582(c)(2), the Eleventh Circuit has made clear that district courts may not intrude on the BOP's sphere of expertise by directing an inmate to home confinement. *See United States v. Anderson*, 517 F. App'x 772, 775 (11th Cir. 2013) ("[T]o the extent that Anderson requested that the district court order the BOP to place him in home confinement, that request is outside the scope of § 3582(c)(2). The BOP, not the district court, retained authority to choose the place of Anderson's incarceration.").

Notably, the only federal appellate court to consider this issue under the provision at issue here, § 3582(c)(1), has held—consistent with *Anderson*—that "the authority to grant home confinement remains solely with the Attorney General and the BOP." *United States v. Brummett*, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). District courts in this Circuit agree. *See United States v. Bonilla Mesa*, 2020 WL 4757335, at *7 (S.D. Fla. July 17, 2020) ("Defendant asks, in the alternative, that the Court place him on home confinement for the remainder of his sentence. The Court has no authority to order this relief."); *United States v. Israel*, 2020 WL 3893987, at *9 (S.D. Fla. July 10, 2020) ("First, to the extent that Defendant seeks release to home confinement, the Court is without authority to grant the requested relief."); *United States v. Christian*, 2020 WL 5518616, at *1 (S.D. Ga. Sept. 14, 2020) ("This Court lacks the authority to order the BOP to release a prisoner on home confinement."); *United States v. Hester*, 2020 WL 5535010, at *1 n.1 (M.D. Ala. Sept. 15, 2020) ("To the extent that Hester seeks release to home confinement pursuant to the CARES Act due to the COVID-19 pandemic, the Court has no authority to order the

13

Bureau of Prisons to change the Defendant's current place of incarceration."); *United States v. Brantly*, 2020 WL 5514571, at *1 (M.D. Fla. Sept. 14, 2020) ("However, the Court has no authority to direct the [BOP] to place Brantley in home confinement because such decisions are committed solely to the BOP's discretion."). This Court, then, does not have the authority to put Mr. Cannet in home confinement.

Although Mr. Cannet does not explain why he's entitled to a furlough—or what authority this Court might have to compel that relief—this alternative argument fails for essentially the same reasons. The Court does not have the power to direct the BOP to exercise its "temporary release" authority under § 3622. *See, e.g., In re Radcliff*, 2012 WL 5974172, at *1 (10th Cir. Nov. 28, 2012) ("[I]t is up to the BOP, not the district court, to consider whether, in its discretion, [the prisoner] should be granted temporary release under [§ 3622]"); *United States v. Grass*, 561 F. Supp. 2d 535, 536 (E.D. Pa. 2008) (explaining that "temporary release" under § 3622 is "within the sole discretion of the BOP").

In some respects, of course, this discussion is academic because the Court could achieve the same result by simply reducing Mr. Cannet's sentence to time served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Mr. Cannet has carried his burden of showing that he is entitled to that reduction—which, for the reasons outlined above, he has failed to do here.

14

\*\*\*

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that Mr. Cannet's Motion [ECF No. 118] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 25th day of January 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record